RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE _l_ / _30_ / _12_

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| FRANCIS LONCAR,<br>          Petitioner | CIVIL ACTION<br>SECTION "P"<br>1:11-CV-01386 |
| VERSUS | |
| WARDEN, LOUISIANA STATE<br>PENITENTIARY,<br>          Respondent | JUDGE JAMES T. TRIMBLE<br>MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by petitioner Francis Joseph Loncar ("Loncar") on July 25, 2011.   Loncar is contesting his 2006 conviction by a jury in the Louisiana Seventh Judicial District Court, Concordia Parish, on one count of second degree murder. Loncar was sentenced to life imprisonment.   Loncar raises the following grounds for habeas relief:

> 1. Loncar was denied due process and a fair trial when the State failed to disclose the full scope of a deal struck with the prosecution witnesses, and a witness testified incompletely concerning the scope of his agreement with the prosecution.
>
> 2. Loncar was denied the effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution and the Louisiana Constitution Art. 1, Sec. 13 when counsel:
> (1) failed to object to the prosecutors improper voir dire,
> (2) failed to object to admission of prejudicial other crimes evidence in violation of the 5th, 6th, and 14th Amendments,
> (3) failed to object to the introduction of statements by

a co-defendant which purported to show a conspiracy without first establishing a prima facie case of conspiracy,
(4) failed to request the court to give instruction on the law of conspiracy or object to the lack thereof,
(5) failed to object to the introduction of other crimes evidence of criminal conspiracy, coercion to commit prostitution or pandering, and use and possession of crack cocaine without proper notice as required by due process of law,
(6) failed to object to the introduction of hearsay testimony alleged to be statements made by non-testifying co-defendant Jason Short, and
(7) failed to object to the introduction of testimonial statements in violation of Crawford v. Washington and the 6th and 14th Amendments.

Loncar alleges and Respondent admits exhaustion of Loncar's state court remedies.   Loncar's habeas petition is now before the court for disposition.

### Rule 8(a) Resolution

This court is able to resolve the merits of this habeas corpus petition without the necessity of an evidentiary hearing because there is no genuine issue of material fact that is relevant to the petitioner's claims, and the State court records provide the required and adequate factual basis necessary to the resolution of the habeas corpus petition.  Moya v. Estelle, 696 F.2d 329, 332-33 (5th Cir. 1983); Easter v. Estelle, 609 F.2d 756, 761 (5th Cir. 1980); Habeas Corpus Rule 8(a).

### Summary of Pertinent Facts

The facts of this case as found by the Louisiana Third Circuit Court of Appeal are set forth in an unpublished opinion at Doc.

19, p. 5/154):[1]

"The charge against the defendant arises from the robbery and shooting of Richard Allen Cupstid on Roundtree Road in Concordia Parish, Louisiana, sometime around midnight between April 4 and April 5, 2005.   Kenneth Barker and Katrina Hudson observed Mr. Cupstid laying next to the roadway as they traveled together to their midnight work shifts.   They notified law enforcement authorities, and Mr. Cupstid was transported to a local facility for medical care.   He died the next day.   An autopsy established that Mr. Cupstid had injuries consistent with being struck by a vehicle and that he had been shot in the head with a .22 caliber weapon.   It further established that the gunshot would was the cause of death.

"The law enforcement investigation discovered that Mr. Barker and Ms. Hudson had passed the location where they observed Mr. Cupstid's body two times within five minutes.   After leaving for work, Mr. Barker realized that he had forgotten his wallet that morning, and they traversed Roundtree Road to retrieve it from his home. The first time they passed the point they ultimately saw the body, they observed a parked silver Mustang occupied by two men.   After retrieving the wallet, they passed the location again.   This time, they observed Mr. Cupstid's body, but the Mustang had left the scene.

---

[1] The following facts were set forth in the companion case of State v. Short, 06-1451 (La. App. 3d Cir. 5/16/07), 958 So.2d 93, 94, writs den., 2007-K-1473, 2007-K-1646 (La. 2/1/08), 976 So.2d 714, 715, cert. den., 555 U.S. 869, 129 S.Ct. 164 (2008):
    "In the early morning hours of April 5, 2005, Jason Lee Short and Joseph Loncar allegedly left Short's residence to rob a crack dealer. En route, they spotted the victim, Richard Cupstid, walking down Roundtree Road in Concordia Parish. Cupstid was struck by Short's vehicle. He was then beaten and robbed. Short and Loncar then got back in the vehicle and exited Roundtree Road onto U.S. Highway 84/65. Within minutes, they re-entered Roundtree Road and headed back to Short's residence, where they again saw the victim. Cupstid was then shot in the head at close range and left on the side of the roadway. Cupstid died as a result of his injuries."

3

"The followup investigation established that Jason Short generally drove a silver Mustang. Based on this information, several deputies traveled to Mr Short's residence, where they encountered Mr. Short and his girlfriend, Ginger Campbell. The deputies found a recently washed, silver Mustang parked behind the residence and a barbeque grill in which clothes and shoes were being burned. The Mustang's passenger side windshield had been smashed. During the investigation at Mr. Short's residence, the deputies recovered a .38 revolver. After observing the damage to the Mustang, some of the officers returned to the scene of the offense and recovered a piece of a windshield wiper which matched exactly the missing portion of the Mustang's windshield wiper on the passenger side.

When questioned concerning the accumulated evidence, Mr. Short informed the investigating officer that he had loaned the Mustang to the defendant and a friend named Bobby Beard. However, at trial, Mr. Beard presented a different story. According to Mr. Beard, he spent the afternoon of April 4, 2005 at Mr. Short's residence drinking alcohol with Mr. Short and Ms. Campbell. He testified that the defendant, Angela Mapp (the defendant's girlfriend) and Keysha Freeman (Ms. Mapp's niece) appeared at the residence at approximately 10:00 p.m., and shortly thereafter he went with the defendant and Mr. Short to his residence to smoke crack cocaine. Later, they returned to Mr. Short's residence.

"Mr. Beard testified that while on the way to Mr. Short's residence, Mr. Short and the defendant discussed robbing a drug dealer they knew to obtain drugs and money. When he arrived at Mr. Short's residence the second time, he laid on the couch. While on the couch, he heard the defendant and Mr. Short discussing the acquisition of weapons. With regard to weapons, Mr. Beard testified that he knew Mr. Short possessed a .22 rifle because Mr. Short had shown it to him a few days before the shooting. Soon after the weapons discussion, Mr. Short and the defendant left the residence. When the two men returned, approximately thirty minutes later, Mr. Beard overheard Mr. Short tell Ms. Campbell to wash the car. Sometime later Ms. Mapp arrived to pick up the defendant, and Mr. Beard obtained a ride with the couple.

"Angela Mapp supported Mr. Beard's testimony concerning the events of the evening, stating that at approximately

4

3:00 a.m., she picked up the defendant and Mr. Beard at Mr. Short's residence. According to Ms. Mapp, while on the way to the defendant's residence that morning, he informed her that Mr. Short had shot someone beside the roadway. Specifically, he told her that he was a passenger in Mr. Short's 1999 silver Mustang, and while traveling along Roundtree Road, the two men observed Mr. Cupstid walking along the roadway. He further told her that Mr. Short stopped the vehicle and the two men beat and robbed Mr. Cupstid, leaving him laying on the side of the road, that after they left the scene, they realized they had only obtained $3.00 in the robbery; that they then turned around and returned to find Mr. Cupstid again walking along the roadway, and that Mr. Short then intentionally swerved the vehicle to strike Mr. Cupstid, throwing him into the windshield. According to Ms. Mapp, the defendant informed her that they again drove away, only to return a few moments later. This time when they returned, Mr. Cupstid was struggling down the road and approached the Mustang seeking help. According to the defendant's statement to Ms. Mapp, the .38 pistol was under the passenger seat, and the .22 rifle was in his lap. When Mr. Short told the defendant to give him a gun, the defendant provided the .22 rifle. Mr. Short then shot Mr. Cupstid at point blank range.

"Ms. Mapp testified that immediately upon returning to the defendant's residence, they quickly packed and left for Florida, picking up Ms. Freeman before they left the state. Ms. Freeman did not become aware of what had happened until the three arrived in Florida. When she was told of the shooting, she became so upset that she made arrangements to return to Louisiana. The day after Ms. Freeman left for Louisiana, Ms. Mapp and the defendant were apprehended by Florida law enforcement officials and were ultimately returned to Louisiana to stand trial. At the time of the defendant's trial, Ms. Mapp had entered a guilty plea to accessory after the fact to second degree murder and was awaiting sentencing."

<u>Standard of Review</u>

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall be considered only on the ground that he is in custody in violation

5

of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254 and AEDPA, which is applicable to habeas petitions filed after its effective date on April 24, 1996, habeas relief is not available to a state prisoner with respect to a claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim (1) resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an *unreasonable determination* of the facts in light of the evidence presented in the State Court proceeding.  Therefore, pure questions of law and mixed questions of law and fact are reviewed under Section 2254 (d)(1), and questions of fact are reviewed under Section 2254(d)(2).  Martin v. Cain, 246 F.3d 471, 475-76 (5th Cir. 2001), cert. den., 534 U.S. 885, 122 S.Ct. 194 (2001), and cases cited therein.

<u>Law and Analysis</u>

<u>Ground 1 - Withheld Impeachment Evidence</u>

Loncar contends he was denied due process and a fair trial when the State failed to disclose the full scope of a deal struck with the prosecution witnesses, Angela Mapp, Ginger Campbell (now Saucier), and Bobby Beard (referred to by Loncar as "Bobby Baird"), and the witnesses testified incompletely concerning the scope of

their agreements with the prosecution.

The Due Process Clause of the Fourteenth Amendment forbids the State from knowingly using perjured testimony. Beltran v. Cockrell, 294 F.3d 730, 736 (5th Cir. 2002), citing Napue v. Illinois, 360 U.S. 264, 270, 79 S.Ct. 1173, 1177 (1959). In order for an allegation of perjured testimony to constitute a due process violation, a petitioner must show the prosecution knowingly presented materially false evidence to the jury. Koch v. Puckett, 907 F.2d 524, 531 (5th Cir. 1990), citing United States v. Martinez-Mercado, 888 F.2d 1484, 1492 (5th Cir. 1989). The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension. Prosecutorial misbehavior, alone, does not constitute a wrong of constitutional dimension and does not require a new trial. Smith v. Phillips, 455 U.S. 209, 102 S.Ct. 940 (1982), citing Giglio v. U.S., 405 U.S. 150, 154, 92 S.Ct. 763, 866 (1972). Even in cases of egregious prosecutorial misconduct, such as the knowing use of perjured testimony, a new trial is required only when the tainted evidence was material to the case. The materiality requirement implicitly recognizes that the misconduct's effect on the trial, not the blameworthiness of the prosecutor, is the crucial inquiry for due

process purposes. <u>Smith</u>, 455 U.S. at 220 n.10, 102 S.Ct. at 947 n.10. There is no violation of due process resulting from prosecutorial non-disclosure of false testimony if defense counsel is aware of it and fails to object. <u>Beltran</u>, 294 F.3d at 736. The Government can discharge its responsibility to correct false evidence by providing defense counsel with the correct information at a time when recall of the prevaricating witnesses and further exploration of there testimony is still possible. <u>Beltran</u>, 294 F.3d at 736.

To support his claim, Loncar submitted an affidavit by Angela Mapp dated August 13, 2009 (Doc. 19, p. 70/154), in which Mapp states her lawyer told her the trial judge would give her favorable consideration and "most likely" suspend the remaining sentence or put her on probation if she pleaded guilty (to accessory after the fact) and agreed to testify against both Loncar and his accomplice, Jason Short, but that she would receive the maximum sentence of five years if she did not testify. Mapp further states in her affidavit that, since she testified against Loncar and Short, she received a suspended five year sentence (Doc. 18, p. 71/154).

During voir dire, the prosecutor told prospective jurors that he did not have a plea bargain with Angela Mapp or Ginger Campbell Saucier (Doc. 15, p. 122/181). At trial, in response to the prosecutor's questions, Mapp testified that she had pleaded guilty to accessory after the fact of a second degree murder because she

was guilty, she had not yet been sentenced, and she could receive a sentence of up to 5 years imprisonment and up to a $5000 fine. Mapp testified that the prosecutor had not offered her any kind of deals for her testimony (Doc. 17, p. 66/147). On cross-examination, when asked whether she had "a deal of doing probation or going to prison," Mapp replied it was "either or" (Doc. 17, p. 72/147). On re-direct examination, Mapp testified that the prosecutor had never told her she would receive probation if she testified for the State, but that she had been told that in writing (Doc. 17, p. 74/147). Mapp testified that the prosecutor told her to testify as to the truth (Doc. 17, p. 74/147).

Although Mapp testified, in response to the prosecutor's questions, that she did not have any kind of a deal for her testimony, shw made it clear that she understood she would receive a probated sentence in exchange for her testimony and the jury was made aware of that fact. Since Loncar has not shown that Mapp testified falsely regarding whether she would receive a probated sentence if she testified for the State, Loncar has not proven a factual basis for this claim.

Ginger Campbell Saucier testified only that she pleaded "no contest" to a charge of accessory after the fact of second degree murder, the maximum possible sentence was five years imprisonment, and she was not given any promises in exchange for her guilty plea (Doc. 17, p. 88-89/147). Loncar has not offered any evidence to

refute these statements, and has not alleged or shown what sentence Campbell received on her conviction.

Bobby Beard testified that he smoked crack and drank alcohol before he overheard Loncar and Jason Short discussing their plans to rob a drug dealer and that Short told him he had run over someone (Doc. 17, Tr. pp. 17/147-37/147). Beard also testified that the prosecutor had told him to tell the truth (Doc. 17, p. 33/147). Beard did not testify as whether or not charges had been brought or might be brought, or that he made a deal with the State in exchange for this testimony, and Loncar has not offered any evidence to show these things.

Therefore, Loncar has not carried his burden of proving there were deals struck by the State with Campbell and Beard in exchange for their testimony, that he and his attorney were not aware of, which prejudiced him at trial. A habeas petitioner has the burden of proving facts in support of his claim. Unsupported conclusory allegations do not warrant habeas relief. Uresti v. Lynaugh, 821 F.2d 1099, 1103 (5th Cir. 1987); Wilson v. Butler, 813 F.2d 664, 671 (5th Cir.), on rehearing, 825 F.2d 879, 881 (5th Cir. 1987), cert. den., 484 U.S. 1079, 108 S.Ct. 1059, 98 L.Ed.2d 1021 (1988).

This ground for relief is meritless.

Ground 2 - Ineffective Assistance of Counsel

Next, Loncar argues he was denied the effective assistance of trial counsel.

10

To establish that his legal representation at trial fell short of the assistance guaranteed by the Sixth Amendment, a convicted defendant must meet the two-pronged test set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984). A complainant must demonstrate that: (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. A defendant is prejudiced if there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different. To make that determination the court must examine the proceedings as a whole, giving due consideration to the weight of the evidence supporting the verdict and evaluating the alleged failings of counsel in that total setting. To make that determination the court must examine the proceedings as a whole, giving due consideration to the weight of the evidence supporting the verdict and evaluating the alleged failings of counsel in that total setting. The court does not assess any alleged error in isolation. In an examination of state proceedings under 28 U.S.C. § 2254 the court will not reject an adjudication on the merits unless the action by the state court is found to be contrary to, or an unreasonable application of, clearly established federal law, or the state court's determination of the facts is manifestly unreasonable in light of the evidence. Jones v. Cain, 227 F.3d 228 (5th Cir. Oct. 2000), and cases cited therein.

A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time. Dowthitt v. Johnson, 230 F.3d 733 (5th Cir. 2000), cert. den., 532 U.S. 915, 121 S.Ct. 1250 (2001), citing Strickland v. Washington, 466 U.S. at 689. Thus, the court's scrutiny of counsel's performance is highly deferential. The court must be particularly wary of arguments that essentially come down to a matter of degrees, i.e., did counsel investigate enough or did counsel present enough mitigating evidence? Those questions are even less susceptible to judicial second-guessing. Dowthitt, citing Kitchens v. Johnson, 190 F.3d 698, 703 (5th Cir.1999).

In a habeas proceeding alleging ineffective assistance of counsel, the petitioner has the burden of proof. U.S. v. Chavez, 193 F.3d 375, 378 (5th Cir. 1999), citing Clark v. Collins, 19 F.3d 959, 964 (5th Cir.), cert. den., 513 U.S. 966, 115 S.Ct. 432 (1994).

### 1. Motion for New Counsel

First, Loncar complains the trial judge erred in failing to grant his motion for new counsel and replace Attorney Derrick Carson.[2]  Loncar claims Attorney William Yarbrough was initially

---

[2] It is noted by this court that, at a pretrial "hearing" on April 14, 2005 (Doc. 13, p. 69), at which only Attorney Carson was present in court, Carson informed Judge Boothe about a conflict of interest he had in representing Loncar.  Attorney Carson told the court that he had previously represented the victim, Richard A. Cupstid, in a probation revocation proceeding and had been representing him in a civil suit against the

appointed to represent him and he developed an attorney-client relationship with him, but the trial judge, Judge Leo Boothe, removed Yarbrough and appointed William Carson to represent Loncar instead. Loncar contends Carson did not answer letters or phone calls from himself or his family, did not answer his questions about the meaning of the term "felony murder doctrine" or explain his possible defenses, did not file any meaningful pretrial motions to exclude prejudicial evidence, and did not object at trial to evidence or testimony; Loncar states Carson claimed to be too busy with other cases. Loncar filed a pro se motion for new counsel on November 27, 2005 (Doc. 12, p. 43), which was denied after a

---

Louisiana Department of Public Safety, Office of Motor Vehicles, at the time of his death. Carson was not sure whether he should be appointed to represent anyone accused of murdering Cupstid, but admitted he did not yet know the facts and circumstances of Cupstid's death (Doc. 13, p. 69/147-148). Carson further stated that he had inquired with the ethics counsel at the Louisiana Attorney Disciplinary Board about the propriety of accepting the appointment and was told he should get an opinion from the court instead (Doc. 13, p. 70/148). Judge Boothe stated that, in his opinion, there was no conflict of interest, so Carson represented Loncar in his criminal proceeding for the murder of Richard Cupstid (Doc. 13, p. 70/148).

The undersigned considers the fact that Carson represented both Loncar and his victim to have been a conflict of interest. Compare, Castillo v. Estelle, 504 F.2d 1243 (5th Cir. 1974); Zurita v. U.S., 410 F.2d 477 (7th Cir. 1969). However, Loncar has not raised this issue in his habeas petition and, in any event, Carson's conflict of interest does not appear to have had an adverse effect on Carson's representation of Loncar. See U.S. v. Greig, 967 F.2d 1018, 1024 (5th Cir. 1992), and cases cited therein. Also, Mickens v. Taylor, 535 U.S. 162, 173, 122 S.Ct. 1237, 1244 (2002)..

hearing on December 14, 2005 (Doc. 13, pp. 114, et seq.).[3]

In this ground for relief, Loncar has not alleged any specific error committed by his attorney or shown any prejudice.  A habeas petitioner has the burden of proving facts in support of his claim. Unsupported conclusory allegations do not warrant habeas relief. Uresti v. Lynaugh, 821 F.2d 1099, 1103 (5th Cir. 1987); Wilson v. Butler, 813 F.2d 664, 671 (5th Cir.), on rehearing, 825 F.2d 879, 881 (5th Cir. 1987), cert. den., 484 U.S. 1079, 108 S.Ct. 1059 (1988).  Therefore, Loncar's allegations do not carry his burden of

---

[3] At that hearing, Loncar testified that Carson had not visited him or spoken to him once in the nine months since he had been appointed to represent him, had been holding paperwork intended for Loncar for four months, and that he, Loncar, never knew what was going on with his case (Doc. 13, pp. 117-118). Attorney Carson testified that he had been working on a "deal" for Loncar, had spoken with Loncar every time he had come to court, and there had been no further developments in Loncar's case to speak to him about (Doc. 13, p. 118).  In rebuttal, Loncar stated he had spoken with Carson for a total of about five minutes since Carson had been appointed to represent him, and that Carson had told Loncar's family to stop calling his office (Doc. 13, p. 119).  Judge Boothe advised Loncar to keep Carson as his attorney (Doc. 13, p. 120), explained that Yarbrough had been removed because he had a conflict of interest (Doc. 13, p. 121), and explained that Carson was very busy and did not have time to counsel him (Doc. 13, p. 123).  Attorney Carson also testified that he was very busy and does not have time to "babysit" Loncar and "hold his hand" (Doc. 13, pp. 122-123).  Loncar stated that he would like to have an update on his case every three months or so as to what is going on his case (Doc. 13, p. 124).  The District Attorney then explained that he had been working on Loncar's co-defendant's case (Jason Short) and had not really been moving forward with Attorney Carson on Loncar's case, and that he thought Yarbrough had also been appointed to represent another person involved in Loncar's case, which had caused the conflict of interest (Doc. 13, p. 125).  Loncar's motion for new court-appointed counsel was denied.

proving he had ineffective assistance of counsel.  This ground for relief is meritless.

### 2. Prosecutor's Remarks

Next, Loncar argues his attorney was ineffective for failing to object to the prosecutor's improper voir dire.  Specifically, Loncar complains the prosecutor informed the prospective jurors, during voir dire, that Mapp and Campbell had each pleaded guilty to the charge of accessory after the fact (Doc. 15, p. 20/181).

There is no need to advise the jury or its prospective members that someone not in court, not on trial, and not to be tried, has pleaded guilty.  The prejudice to the remaining parties who are charged with complicity in the acts of the self-confessed guilty participant is obvious.  U.S. v. Hansen, 544 F.2d 778, 780 (5th Cir. 1977)(codefendant pleaded guilty before the trial commenced).  It is well-settled that a codefendant's guilty plea may not be used as substantive evidence of a defendant's guilt.  U.S. v. Ramos-Cardenas, 524 F.3d 600, 610 (5th Cir.), cert. den., 555 U.S. 908, 949, 129 S.Ct. 247, 403 (2008).  However, if a codefendant testifies, either the government or the defense may elicit evidence of a guilty plea for the jury to consider in assessing the codefendant's credibility as a witness.  U.S. v. Baez, 703 F.2d 453, 455 (10th Cir. 1983).  Also, Ramos-Cardenas, 524 F.3d at 610, citing Baez, 703 F.2d at 455.

In the case at bar, Loncar contends it was improper for the

prosecutor to inform the potential jurors that Angela Mapp and Ginger Campbell both pleaded guilty to being accessories after the fact for the crime for which Loncar was on trial (Doc. 15, p. 20/181, 30/181-31/181). However, since Mapp and Campbell both testified at Loncar's trial and were subject to cross-examination by Loncar, Loncar was not prejudiced by the prosecutor's statements to the potential jurors regarding the guilty pleas. Therefore, Loncar's attorney did not provide ineffective assistance in this respect.

Loncar also complains the prosecutor impermissibly bolstered the credibility of his witnesses by asking the potential jurors if they had any problem with hearing testimony from convicted felons (Doc. 15, p. 19/181-20/181), then stated that two of the people involved in the crime for which Loncar was on trial had pleaded guilty or "no contest" to being an accessory after the fact in the crime. Loncar complains the prosecutor's statements indicated his guilt to the potential jurors.

The fact that the prosecutor informed the jury venire that two of his potential witnesses are convicted felons does not bolster the credibility of those witnesses. Therefore, this complaint has no basis in fact. Moreover, Loncar does not have the right to have the prosecutor not indicate that Loncar is guilty; to the contrary, it is the prosecutor's job to convince the jury that a criminal defendant is guilty and that job starts during voir dire. It is

16

implicit in every criminal trial that the prosecutor believes the defendant is guilty, which is why the defendant is prosecuted. This complaint has no basis in law. Therefore, Loncar did not have ineffective assistance of counsel in these respects.

Loncar contends the prosecutor improperly asked Mapp and Campbell several times during trial whether they were telling the truth, thereby bolstering their credibility (Doc. 17, Tr. p. 68/147, 76/147, . However, the prosecutor, as well as the defense, are entitled to ask witnesses whether they are answering questions truthfully. The prosecutor did not err in doing so and Loncar's attorney did nor err by not objecting to such questions.

Next, Loncar alleges the prosecutor improperly expressed his "personal belief" to the jury that Loncar was guilty. However, Loncar has not pointed to any instance in which the prosecutor did so; instead, he points to the prosecutor's statements as to what the evidence will show, what he intends to try to prove, and that the law (on felony murder) says Loncar (and Short) are guilty if the prosecutor proves they are. These are not statements impermissibly expressing the prosecutor's personal belief in Loncar's guilt, but instead are permissible comments on the case the prosecutor intends to put on and on the weight of the evidence. See Nichols v. Scott, 69 F.3d 1255, 1282 (5th Cir. 1995), cert. den., 518 U.S. 1022, 116 S.Ct. 2559 (1996), and cases cited therein. Therefore, Loncar's counsel did not err by failing to

object to these comments.

Loncar contends the prosecutor made improper comments, without objection by his attorney, on the intent of the law when he attempted to explain that someone can be guilty of second degree murder even if the prosecutor cannot prove which of more than one codefendant actually killed the victim, stating "the legislature doesn't want somebody to walk away just because the DA can't prove actually who did the shooting, who did the killing" (Doc. 15, p. 100/181).  That is not an impermissible comment by the prosecutor, but instead accurately explains the application of the law of principals[4] in a situation such as presented in Loncar's case. Loncar has not shown that his attorney erred in this regard.

Loncar also contends the prosecutor erroneously told the jury they did not have to follow the law and his attorney failed to object to that statement.[5]  Though the statement, taken out of

---

[4] La.R.S. 14:24 states, "All persons concerned in the commission of a crime, whether present or absent and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals."

[5] During voir dire, the prosecutor explained the law as to being an accessory to a second felony degree murder and stated to the potential jurors (Doc. 15, p. 104/181):
"I know it's tough and it's a very difficult situation. It's very difficult questions that I'm asking and I usually don't' take near this long in voir dire but – and the voir dire is probably [g]oing to last longer than the trial.  But, you know, it is such a serious situation and it is Mr. Loncar's – you know, he may spend the rest of his life in prison because of this.  It is a serious deal and I am taking my time and I want ya'll to fulyl understand the law.  Ya'll don't have to accept

18

context, appears to give jurors permission to not follow the law, it is clear in the context of the prosecutor's entire voir dire discussion that he was attempting to find which potential jurors would have difficulty accepting and applying the law and which would not.   Therefore, Loncar's attorney did not err by not objecting to the comment.

Finally, Loncar argues his attorney erred in failing to object to the prosecutor's comments to prospective jurors that he would not argue with their comments as to the whether the law was right (Doc. 15, pp. 122/181-125/181).   Those comments emanated from a discussion as to a potential juror's belief that Mapp and Campbell should have been charged as principals in Cupstid's murder instead of just accessories after the fact, and that Loncar and Short should have been charged with murder (presumably first degree) instead of felony murder.   Since the prosecutor simply refused to engage in a discussion with potential jurors as to whether the law was right or wrong, and consistently stated that the law as it is written must be accepted by each juror and applied to the case, Loncar's attorney did not err by not objecting to those comments.

Since Loncar has not shown his attorney provided ineffective assistance in these respects, this ground for relief is meritless.

---

the law.   I think that's – like I said, that's a stupid law and ya'll don't want to follow it, that's our right as Americans.   We can stand up and say no."

### 3. Other Crimes Evidence

Loncar contends his attorney erred in failing to object to the admission of other crimes evidence when Beard testified that he, Mapp, Loncar and Short had been smoking crack.  Loncar argues that Beard's testimony painted a picture of him as a bad person and that, since it occurred the day before the murder, it was irrelevant to the crime for which he was being tried.  Loncar also contends his attorney should have objected to testimony by Mapp that she, Freeman and Loncar planned to have Freeman earn money as a prostitute to support them all in Florida, where Loncar had fled with Mapp after the murder (Doc. 17, p. 57/147- 63/147).

The admission of improper evidence in a state criminal trial will constitute grounds for habeas relief only if fundamental fairness was prevented thereby.  What elevates the mistake to a constitutional plane is at least two-fold.  First, the mistake must be material in the sense of a crucial, critical, highly significant factor.  Second, it must have some state complicity in it.  Shaw v. Estelle, 686 F.2d 273, 275 (5th Cir. 1982), cert. den., 459 U.S. 1215, 103 S.Ct. 1215 (1983), and cases cited therein.  Also, Hills v. Henderson, 529 F.2d 397 (5th Cir. 1976), cert. den., 429 U.S. 850, 97 S.Ct. 139 (1976).

Louisiana law generally prohibits the admission of "other crimes evidence," that is, evidence of criminal conduct uncharged in the subject indictment, with exceptions for proving identity,

20

system or res gestae.  Robinson v. Whitley, 2 F.3d 562, 566 (5th Cir. 1993), cert. den, 510 U.S. 1167, 114 S.Ct. 1197, 127 L.Ed.2d 546 (1994), citing State v. Prieur, 277 So.2d 126, 128 (La. 1973). Evidence of other crimes may be admitted when it forms part of the res gestae of the charged offense.  Robinson, 2 F.3d at 566.  To constitute res gestae, the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous action.  In such cases the purpose served by admission of other crimes evidence is not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place.  Evidence which does not form part of the res gestae, but which merely depicts the defendant as a bad man, may constitute a due process violation if it renders the trial fundamentally unfair.  See Robinson, 2 F.3d at 567.

Loncar argues that Beard testified they all smoked crack the day before the murder, so that event could not have formed part of the res gestae of the offense.  However, Beard testified they had smoked crack a short while before Loncar and Short left and murdered Cupstid, and these events took place in the middle of the night of April 4-5, 2005, straddling the midnight hour.  Therefore, smoking crack constituted part of the res gestae of the offense and was admissible into evidence, and Loncar's attorney did not err by failing to object to that testimony.

Moreover, Mapp's testimony about earning money by having Freeman prostitute herself when Loncar fled to Florida immediately after the murder (Doc. 17, p. 57/147- 63/147), as well as Freeman's testimony that she was coerced into prostitution by Mapp and Loncar (Doc. 18, p. 37/147), also concerned actions which were part of the res gestae of the charged offense.  That activity took place during Loncar's flight from Louisiana following the offense.  Again, Loncar's attorney did not err by not objecting.

Finally the testimony concerning Loncar, Mapp and Freeman shoplifting food in Florida during Loncar's flight from Louisiana to Florida after the offense (Doc. 17, p. 60/147) likewise concerns part of the res gestae of the murder and was not inadmissible. Loncar's attorney did not err by not objecting.

Therefore, Loncar has not carried his burden of proving he had ineffective assistance of counsel and this ground for relief is meritless.

### 3, 4. Conspiracy

Next, Loncar contends his attorney erred in failing to object to the introduction of statements by a co-defendant which purported to show a conspiracy (apparently between himself and Jason Short to rob a drug dealer) without first establishing a prima facie case of conspiracy, and in failing to request the court to give instruction on the law of conspiracy or object to the lack thereof.  However, Loncar was not charged with and on trial for conspiracy because

there was no conspiracy; although Loncar and Short intended to conspire to rob a drug dealer, a conspiracy did not occur because they did not commit any overt act in furtherance of that offense. See La.R.S. 14:26;[6] State v. Richards, 426 So.2d 1314, 1316-1317 (La. 1982).  Since there was no conspiracy, it was not necessary for the prosecutor to establish a prima facie case of conspiracy or for the court to give an instruction on the law of conspiracy, and Loncar's attorney did not err by not objecting.  To the extent Loncar may be referring to a conspiracy to kill Cupstid, there was no conspiracy for that offense, either, because he and Short did not plan to rob the first person they saw by the road, nor was there evidence that they planed to kill anyone.  Their actions with regard to Cupstid appear to have been impulsive and unplanned.

Therefore, this ground for relief lacks any basis in fact and is also meritless.

5.

Loncar contends his attorney erred in failing to object to the introduction of other crimes evidence of criminal conspiracy, coercion to commit prostitution or pandering, and use and possession of crack cocaine without proper notice as required by

---

[6] La.R.S. 14:26 states that "Criminal conspiracy is the agreement or combination of two or more persons for the specific purpose of committing any crime[.]... [A]n agreement to commit a crime or combination shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement or combination."

23

due process of law.

As stated above, although Loncar and Short intended to form a conspiracy to rob a drug dealer, that conspiracy did not occur. Moreover, as already discussed, the crimes of pandering and possession of crack formed part of the res gestae of the offense charged. Notice is not necessary when the other crimes evidence sought to be introduced forms an integral part of the crime charged. State v. Broussard, 95-792 (La. App. 3d Cir. 12/6/95), 664 So.2d 835, 838. Therefore, Loncar's attorney did not err in failing to object to this evidence and to the lack of notice.

This ground for relief is meritless.

### 6-7. Hearsay Evidence

Loncar argues his attorney erred in failing to object to the introduction of hearsay testimony by Bobby Beard which was alleged to be statements made by non-testifying co-defendant Jason Short; according to Loncar, this testimony was admitted by the trial judge pursuant to the hearsay exception for statements by co-conspirators pursuant to La.C.E. art. 801(D)(3)(b).[7]  Beard testified as to a conversation he overheard between Short and Loncar before they left concerning their plan to rob a drug dealer and another conversation, after they returned, about the murder. Beard also testified that he overheard Short tell Campbell to wash his car

---

[7] The state courts did not deal with this issue on direct appeal (because Loncar's attorney failed to object) or on post-conviction relief.

24

because he had run over somebody with it.  Loncar also complains that his attorney did not object when Campbell testified that Short told her he had run over somebody with his car and had talked about getting guns.  Loncar contends this was done in violation of his right to confront the witnesses against him, pursuant to Crawford v. Washington, 541 U.S. 36, 59, 124 S.Ct. 1354 (2004).  Loncar further contends the trial judge erred in ruling that hearsay testimony by Beard and Campbell as to Short's out-of-court statements was admissible under a hearsay exception,[8] and that his attorney erred in failing to object.

Claims challenging the exclusion or inclusion of evidence based on state law do not afford a basis for federal habeas corpus relief.  A habeas petitioner cannot rely on a state-law hearsay violation as the basis for his federal habeas application. Gonzales v. Thaler, 643 F.3d 425, 429 (5th Cir. 2011).  Therefore, Loncar has failed to state a constitutional claim cognizable under Section 2254.

However, Loncar also argues that admission of hearsay testimony as to Short's out-of-court statements violated his Sixth Amendment right to confront and cross-examine Short.  The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be

_____

[8] Loncar does not direct this court to where the trial court made such a ruling and there does not appear to be one.

confronted with the witnesses against him." This bedrock procedural guarantee applies to both federal and state prosecutions. Crawford, 541 U.S. at 42, 124 S.Ct. at 1359, citing Pointer v. Texas, 380 U.S. 400, 406, 85 S.Ct. 1065 (1965). The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination. Delaware v. Van Arsdall, 475 U.S. 673, 678, 106 S.Ct. 1431, 1434 (1986), citing Davis v. Alaska, 415 U.S. 308, 315-316, 94 S.Ct. 1105, 1110 (1974). A defendant has a Sixth Amendment right to face his accuser. Bruton v. United States, 391 U.S. 123, 126, 88 S.Ct. 1620 (1968). The Confrontation Clause applies to out-of-court statements introduced at trial, as well as to in-court testimony. Crawford, 541 U.S. at 50-51, 124 S.Ct. at 1364.

In Crawford, 541 U.S. at 50-51, 124 S.Ct. at 1364, the Supreme Court held it is reversible error to admit into evidence an out of court testimonial statement by a non-testifying co-defendant in violation of the Confrontation Clause, where the witness was not unavailable and the defendant did not have a prior opportunity to cross-examine the witness.[9] Also, Bullcoming v. New Mexico, 131

---

[9] Although the Fifth Circuit Court of Appeals has limited the ability to block a non-testifying co-defendant's confession from being introduced at one's trial, as set forth in Bruton, when the confession is admitted at the invitation of the defendant or when such admissions are harmless beyond a reasonable doubt, United States v. Matthews, 178 F.3d 295, 300 (5th Cir. 1999), cert. den., 528 U.S. 944, 120 S.Ct. 359 (1999), Matthews appears to have been overruled in part by Crawford.

S.Ct. 2705, 2713-2715 (U.S. 2011)(there is no forensic report exception to the Confrontation Clause); Melendez v. Diaz, 129 S.Ct. 2527, 2532 (U.S. 2009)(the introduction of affidavits at trial does not create an exception to the Confrontation Clause unless the defendant had a prior opportunity to cross-examine the absent but available affiant).

To rank as "testimonial," a statement must have a primary purpose of establishing or proving past events potentially relevant to later criminal prosecution. Bullcoming, 131 S.Ct. at 2714 n.6, citing Davis v. Washington, 547 U.S. 813, 822, 126 S.Ct. 2266 (2006). Statements made in the absence of any interrogation are not necessarily non-testimonial. Davis, 547 U.S. at 822 n.1, 126 S.Ct. 2274 n.1. Various formulations of the core class of testimonial statements exist: ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially, extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial, and statements taken by police officers in the course of interrogation.

27

Crawford, 541 U.S. at 51-52, 124 S.Ct. 1354.  A person who makes a casual remark to an acquaintance does not bear testimony. Crawford, 541 U.S. at 51, 124 S.Ct. 1354.

Short did not testify at Loncar's trial, there is nothing in the record to indicate why he was called as a witness, and it was not established whether he was available to testify or not. Instead, the State introduced Short's out-of-court statements through testimony by Beard, who overheard Short and Loncar talking before and after the murder, and Campbell, who testified that Short told her that he and Loncar had killed Cupstid.  Loncar's attorney, Carson, did not object to the testimony.

However, Short's statements to Loncar and Campbell, as testified to by Beard and Campbell, were made casually to partners-in-crime and were therefore not "testimonial" within the meaning of the Confrontation Clause.  Therefore, there was no violation of the Confrontation Clause when Campbell and Beard testified to what Short said to them.  Compare, Weedman v. Hartley, 396 Fed. Appx. 556, 561-563 (10th Cir. 2010)(no Confrontation Clause violation where two witnesses testified that non-testifying accomplice admitted to them that both he and the defendant killed the victim and provided details about the crime, under the impression that his statements would remain secret).

Since the Confrontation Clause was not violated, Loncar's attorney did not err by failing to object to Beard's and Campbell's

hearsay testimony as to what Short said.

These grounds for relief are also meritless.

### Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Loncar's Secton 2254 petition for writ of habeas corpus be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 2(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2254 cases in the United States District Courts, this court must issue

29

or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. § 2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

THUS DONE AND SIGNED in Alexandria, Louisiana on the ⟋⟍⟍ day of January, 2012.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE